IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

| | |
|---|---|
| NATHAN HALES | \* \* \* |
| Plaintiff, | \* |
| v. | \*    No. 4:22-CV-01078-JJV |
| | \* \* |
| ROBERT WAKEFIELD, Administrator, Lonoke County Jail, *et al.*, | \* \* \* |
| Defendants. | \* |

**MEMORANDUM AND ORDER**

**I.    DISCUSSION**

Nathan Hales ("Plaintiff") is a pretrial detainee at the Lonoke County Detention Facility ("LCDF") who has filed a *pro se* Complaint seeking relief pursuant to 42 U.S.C. § 1983. (Doc. 2.) Plaintiff says from October 27 to 31, 2022, Defendants Jail Administrator Robert Wakefield, Officer Micah Dukes, and Deputy Trinity Bowers intentionally subjected him to inhumane conditions of confinement. Plaintiff is proceeding with this claim against Defendants in their personal capacities only. All other claims have been previously dismissed without prejudice, and the parties have consented to proceed before me. (Docs. 13, 14.)

Defendants have filed a Motion for Summary Judgment. (Docs. 18-20.) Plaintiff has not filed a Response, and the time to do so has expired. Thus, the facts in Defendants' Statement of Facts (Doc. 20) are deemed admitted. *See* Local Rule 56.1(c); *Jackson v. Ark. Dept. of Educ., Vocational & Tech. Educ. Div.*, 272 F.3d 1020, 1027 (8th Cir. 2001). And, as will be discussed herein, those facts are supported by the record. After careful consideration and for the following reasons, the Motion for Summary Judgment is GRANTED, Plaintiff's remaining inhumane

conditions of confinement claim is DISMISSED with prejudice, and this case is CLOSED.

## II.    SUMMARY JUDGEMENT STANDARD

Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact.  *Celotex,* 477 U.S. at 323. Thereafter, the nonmoving party cannot rest on mere denials or allegations in the pleadings, but instead, must come forward with evidence supporting each element of their claim and demonstrating there is a genuine dispute of material fact for trial.  See Fed R. Civ. P. 56(c); *Celotex*, 477 U.S at 322; *Holden v. Hirner,* 663 F.3d 336, 340 (8th Cir. 2011).   In this regard, a material fact dispute is "genuine" if "the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party." *Greater St. Louis Constr. Laborers Welfare Fund v. B.F.W. Contracting, LLC,* 76 F.4th 753, 757 (8th Cir. 2023).

## III.   EVIDENCE

Plaintiff says in his Complaint that on October 27, 2022, he and two other detainees in E-pod at the LCDF were attacked by detainee Jacob Adams.  (Doc. 2.)  According to Plaintiff, Defendant Wakefield wrongfully concluded he and the other two detainees were the aggressors, sent them to disciplinary segregation, and said, "I'm going to make this unbearable as possible." (*Id*. at 4.)  Plaintiff and the other two detainees were then placed in a one-man holding cell that had feces on the floor and wall, a broken sink, and no running water.  And Plaintiff had to sleep on a mattress on the dirty floor.  Plaintiff claims Defendant Wakefield told Officer Dukes and Deputy Bowers to not give them cleaning supplies, but other officers did so on October 30, 2022.

And he says Officers Dukes and Deputy Bowers did not allow him to shower until October 31, 2022, which is when he and the other two detainees returned to E-pod.

In contrast, Defendants say in their affidavits that after reviewing a video tape of the fight and interviewing the witnesses, they concluded Plaintiff and the other two detainees were the aggressors.  (Docs. 20-8, 20-9, 20-10.)  A video recording of the fight, which is partially obstructed, and a report filed by a non-party officer who witnessed it support that assertion.[1]  (Docs. 20-5, 21.)  To maintain safety and security, Jail Administrator Wakefield says he removed Plaintiff and the other two aggressors from E-pod.  (Docs. 20-8, 20-9, 20-10.)  Because there were no cells available in general population, Defendant Wakefield directed a trustee to clean and vacate his holding cell so Plaintiff and the other two detainees could be placed inside.  (Docs. 20-8, 20-9.)  After Plaintiff complained the holding cell was dirty, Defendants Dukes and a non-party officer directed a different trustee to clean the cell again.  (*Id*.)  The video recording shows the trustee entering the holding cell a with a mop and bucket, but due to the camera's location it is impossible to see inside of the cell.  (Doc. 21.)  However, Defendants say in their affidavits they checked the cell to make sure the water was working, and they did not see any feces.  (Docs. 20-8, 20-9, 20-10.)  And they say Defendant Wakefield did not make any comments about putting Plaintiff in an unpleasant cell or denying him cleaning supplies.  (*Id*.)  Later that evening, Plaintiff and his cellmates flooded their holding cell and the hallway by intentionally clogging the toilet and repeatedly flushing it.  (*Id*.)  The video recording shows several trustees mopping the hallway and entering the flooded cells.  (Doc. 21.)  But inside of the cells cannot be seen.  (*Id*.)  Defendants agree with Plaintiff that he received cleaning supplies on October 30, 2022, and that

---

[1] The fight occurred on the second tier of E-pod.  Due to the position of the camera, the video recording only captures the individuals involved in the fight from the waist down.  (Doc. 21.)

he was allowed to shower on October 31, 2022, when he returned to the pod.  (Docs. 20-8, 20-9, 20-10.)  Finally, it is undisputed Plaintiff did not seek medical attention for any injuries or harm he may have suffered as a result of living in the holding cell for four days.  (Docs. 20-3, 20-4.)

IV.   DISCUSSION

Defendants argue they are entitled to qualified immunity and summary judgment as a matter of law.  Qualified immunity protects government officials from § 1983 liability for damages if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019); *Irvin v. Richardson*, 20 F.4th 1199, 1204 (8th Cir. 2021).  Whether qualified immunity applies to the case at hand is a question of law, not fact, for the court to decide. *Kelsay v. Ernest,* 933 F.3d 975, 981 (8th Cir. 2019).  Defendants are entitled to qualified immunity if: (1) the evidence, viewed in the light most favorable to Plaintiff, does not establish a constitutional violation; or (2) the constitutional right was not clearly established at the time of the alleged violation, such that a reasonable official would not have known that his or her actions were unlawful.  See *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *MacKintrush v. Pulaski Cty. Sheriff's Dept.*, 987 F.3d 767, 770 (8th Cir. 2021).  Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." *Pearson* 555 U.S. at 236; *Mogard v. City of Milbank*, 932 F.3d 1184, 1188 (8th Cir. 2019).  Defendants argue they are entitled to qualified immunity based on the first prong of the analysis.

Because he was a pretrial detainee, Plaintiff's conditions of confinement claim falls under the Fourteenth Amendment, which prohibits pretrial detainees from being punished prior to a finding of guilt.  *Bell v. Wolfish,* 441 U.S. 520, 535-37 (1979); *Stearns v. Inmate Servs. Corp.*, 957 F.3d 902, 906-07 (8th Cir. 2020).  But "not every disability imposed during pretrial detention

amounts to 'punishment' in the constitutional sense." *Hall v. Higgins,* 77 F.4th 1171, 1179 (8th Cir. 2023) (quoting *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996)). Thus, to defeat qualified immunity and proceed to trial on a Fourteenth Amendment conditions of confinement claim, a detainee must have evidence the conditions were "intentionally punitive." *Stearns*, 957 F.3d at 907. In the alternative, a pretrial detainee must have evidence the conditions "were not reasonably related to a legitimate governmental purpose or were excessive in relation to that purpose." *Id.*; *Hall*, 77 F.th at 1179. When making this determination, the court must consider the totality of the circumstances and how long the detainee was exposed to them. *Stearns,* 957 F.3d at 909; *Owens v. Scott Cty. Jail,* 328 F.3d 1026, 1027 (8th Cir. 2003).

As to conditions being "intentionally punitive," Plaintiff says he did not start the fight, Defendant Wakefield declared he was going to "make this unbearable as possible," and Defendant Wakefield instructed the other two Defendants to deny him cleaning supplies and water. (Doc. 2 at 4.) But the Defendants deny this, and as previously mentioned, their version of the facts are deemed <u>admitted</u> because Plaintiff has not properly challenged them. (Docs. 20, 20-8, 20-9, 20-10.) While that admission alone is enough to grant summary judgment, the video recording and the officer's witness statement support Defendants' assertion that Plaintiff was an aggressor in the fight. *See Scott v. Harris,* 550 U.S. 372, 380-81 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment"). Thus, no reasonable juror could conclude putting Plaintiff in the holding cell was intentionally punitive. *See Hall v. Ramsey Cnty.*, 801 F.3d 912, 919-20 (8th Cir. 2015) (placing a pretrial detainee in segregation for institutional security was a "legitimate governmental objective" and not impermissible punishment).

Second, the totality of the circumstances do not suggest the conditions Plaintiff endured in the holding cell for four days were unconstitutional punishment. Plaintiff says he was unable to clean his cell, which allegedly contained feces, from October 27 to 30, 2022. But he has not offered any evidence to support that assertion.[2] *See Conseco Life Ins. Co. v. Williams*, 620 F.3d 902, 909 (8th Cir. 2010) ("When the movant makes a *prima facie* showing of entitlement to summary judgment, the respondent must discard the shielding cloak of formal allegations and meet proof with proof by showing a genuine issue as to a material fact"); *Frevert v. Ford Motor Co.*, 614 F.3d 466, 473-74 (8th Cir. 2010) (to avoid summary judgment, "the plaintiff must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor"). To the contrary, Defendants say in their deemed admitted facts and affidavits that the holding cell was cleaned on October 27, 2022 by the two different trustees and a third time after Plaintiff flooded it. And the video confirms it was cleaned at least two times on October 27, 2022. Defendants also say the holding cell had running water, and Plaintiff has not offered any contrary evidence. Importantly, the parties agree Plaintiff was allowed to shower on October 31, 2022, which was four days after he was moved to the holding cell. *See Mayfield v. Raymond*, No. 3:20-CV-03007, 2020 WL 7714715, at *17 (W.D. Ark. Dec. 29, 2020) (six days without cleaning supplies and four days without a shower for a pretrial detainee was not a constitutional violation). Finally, although Plaintiff had to sleep on a floor mattress for four days, there is no evidence he suffered any injuries as a result of sleeping there or otherwise living in the holding cell for four

---

[2] Even if he had, it is questionable whether being in a dirty cell for three days would constitute a Fourteenth Amendment violation. *See, e.g., Smith,* 87 F.3d at 265 (no constitutional violation when a pretrial detainee was confined in cell with an overflowing toilet for four days); *Goldman,* 2001 WL 838997, a *1 (8th Cir. July 26, 2001) (no constitutional violation when a pretrial detainee slept on the floor next to a toilet for two days and was sprinkled with urine from a when his cellmates used the toilet).

days. *See Goldman v. Forbus*, No. 00-2563WA, 2001 WL 838997, at *1 (8th Cir. July 26, 2001) (no constitutional violation when a pretrial detainee slept on a mattress on the floor for six nights).

Although the totality of the conditions Plaintiff endured for four days in the holding cell may have been different from what he was accustomed to in E-pod, no reasonable juror could find they were unreasonably related to a legitimate governmental purpose or were excessive in relation to that purpose. *See Stearns,* 957 F.3d at 909 ("[t]here is ... a *de minimis* level of imposition with which the Constitution is not concerned") (quoting *Bell*, 441 U.S. 539, n. 21).   Because there is no evidence of a Fourteenth Amendment violation, I conclude Defendants are entitled to qualified immunity and summary judgment in their favor.

## V.     CONCLUSION

IT IS, THEREFORE, ORDERED that:

1. Defendants' Motion for Summary Judgment (Doc. 18) is GRANTED; Plaintiff's inhumane conditions claim against Defendants Wakefield, Dukes, and Bowers in their personal capacities is DISMISSED with prejudice; and this case is CLOSED.

3. It is certified pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from this Order would not be taken in good faith.

Dated this 25th October 2023.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE